**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Noah Duguid, *individually and on behalf of all others similarly situated*, | Civil Action No.: _____ |
| Plaintiff, | |
| v. | |
| Facebook, Inc., | **CLASS ACTION COMPLAINT** |
| Defendant. | |

For his Class Action Complaint, Plaintiff, Noah Duguid, by and through his undersigned counsel, pleading on his own behalf and on behalf of all others similarly situated, states as follows:

## INTRODUCTION

1.     Plaintiff, Noah Duguid ("Plaintiff"), brings this class action for damages resulting from the illegal actions of Facebook, Inc. ("Facebook" or "Defendant"). Defendant negligently, knowingly, and/or willfully sent unauthorized automated text messages to Plaintiff's cellular phone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA").

2.     Wireless spam is a growing problem in the United States. In April 2012, the Pew Research Center found that 69% of texters reported receiving unwanted spam text messages, while 25% reported receiving spam texts weekly. http://www.pewinternet.org/fact-sheets/mobile-technology-fact-sheet/ (last visited November 6, 2014); *see also* Nicole Perlroth, *Spam Invades a Last Refuge, the Cellphone*, N.Y.Times, April 8, 2012, at A1 ("In the United States, consumers received roughly 4.5 billion spam texts [in 2011], more than double the 2.2 billion received in 2009 . . . .").

3.      Facebook operates an online social network.  Facebook's market value reportedly exceeds $200 billion.  Facebook had 864 million daily active users and 1.35 billion monthly active users as of September, 2014.

4.      Consumers often share private information on Facebook.  As an "extra security feature," Facebook can send "login notifications" to alert users when their account is accessed from a new device (computer, smart-phone, tablet, etc.).  Facebook describes the login notifications as follows: "When you turn on login notifications, we'll send you an alert each time someone logs into your account from a new place."  *See* Exhibit A.  Login notifications can be sent to mobile telephones. *See* Exhibit A.

5.      Login notifications in the form of text messages are often sent to the cellular telephones of people who have not authorized Facebook to contact them on their cell phones, who have requested that the notifications stop, and, still more egregious, to the phones of people who do not use Facebook whatsoever.   These text messages state: "Your Facebook account was accessed from [internet browser] at [time].  Log in for more info."  Consumers can receive these unwanted text messages several times a day.

6.      Facebook provides instructions on its website to deactivate the login notification feature.  However, these instructions only address stopping the messages by changing a Facebook user's account settings.  *See* Exhibit B.  Facebook offers no solution for those receiving the messages despite having no Facebook account.

7.      Online blogs indicate that consumers can also respond "off" to Facebook's text messages to get them to stop.  *See* Exhibit C.  Indeed, Facebook responds to such texts with messages stating: "Facebook texts are now off.  Reply on to turn back on."  *See* Exhibits C & D.  However, Facebook often disregards consumers' requests to stop the login notifications.  Rather

than cease as instructed, Facebook continues to knowingly hound consumers with unwanted and unauthorized text messages. *See* Exhibits C & D. As one Facebook user complained, "I have tried texting 'Off' 'OFF' 'off' 'STOP' 'Stop'. NONE of them have stopped the text messages. If I get one more text message from Facebook I will delete the whole account." Exhibit C.

8.      Servicing over a billion Facebook accounts worldwide, Facebook's automated systems are powerful and, when used improperly, capable of extreme invasions into the privacy of American consumers. *See* Exhibit C (consumer complaining of receiving text messages from Facebook "at all hours of the night"). Facebook operates a sloppy system and in doing so shows complete disregard for the privacy of consumers.

9.      Plaintiff is such a consumer and he seeks relief for himself and all others similarly situated from Facebook's unlawful behavior.

## JURISDICTION AND VENUE

10.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331. *Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740, 751-53 (2012).

11.      Jurisdiction in this District is proper pursuant to 28 U.S.C. § 1332(d)(2), as Plaintiff seeks at least $500 in damages for each violation of the TCPA, which when aggregated among a proposed class numbering more than a thousand members, exceeds the $5,000,000.00 threshold for federal court jurisdiction. Plaintiff also alleges a national class which will result in at least one class member residing in a different state.

12.      Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Defendant regularly conducts business in this District. Defendant has a corporate office located at 770 Broadway, New York, New York.

## PARTIES

13.      Plaintiff is, and at all times mentioned herein was, an adult individual residing in

Stevensville, Montana, and is a "person" as defined by 47 U.S.C. § 153(39).

14.    Facebook is a California business entity with an address of 1601 Willow Road,

Menlo Park, California 94025, and is a "person" as defined by 47 U.S.C. § 153(39).

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

15.    The TCPA regulates, among other things, the use of automated telephone dialing

systems ("ATDS").

16.    47 U.S.C. § 227(a)(1) defines an ATDS as equipment having the capacity –

> (A)    to store or produce telephone numbers to be called, using a random or sequential number generator; and

> (B)    to dial such numbers.

17.    Specifically, 47 U.S.C. § 227(1)(A)(iii) prohibits any call using an ATDS to a

cellular phone without prior express consent by the person being called, unless the call is for

emergency purposes.

18.    The FCC has clarified that text messages qualify as "calls" under the TCPA:

> We affirm that under the TCPA, it is unlawful to make *any call* using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number.  Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the party is charged."  This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls, provided the call is made to a telephone number assigned to such service.

*In re Rules* and *Regulations Implementing the Telephone Consumer Protection Act of 1991*,

Report and Order, 18 FCC Rcd. 14014, 14115 (July 3, 2003); *see Satterfield v. Simon &*

*Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009).

19.    "Prior express written consent" means that there must be a written agreement,

signed by the person receiving the call or text, with a "clear and conspicuous disclosure" that

specifically authorizes the seller to send telemarketing communications using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

20.    On or around January 25, 2014, Facebook began placing text messages to Plaintiff's cellular telephone number, 406-xxx-7935.

21.    Facebook placed the text messages from number 326-65 (spelling FBOOK), an abbreviated telephone number known as an SMS short code licensed and operated by Defendant or one of its agents on its behalf.

22.    Facebook placed repeated text messages to the Plaintiff.  A true and correct copy of several of the messages received by Plaintiff are produced below:



23.     Facebook obtained Plaintiff's telephone number through unknown means.

24.     At no time did Plaintiff ever provide his cellular telephone number to Facebook.

25.     At no time did Plaintiff ever enter into a business relationship with Facebook.

26.     At no time did Plaintiff provide Facebook prior written consent for it to send text messages to his cellular phone.

27.     Further, on or around April 20, 2014, Plaintiff sent Facebook a detailed email complaining of the unauthorized text messages to his cell phone and requesting that the text messages cease.  In response, Facebook sent Plaintiff an automated email directing Plaintiff to log on to the Facebook website to report problematic "content."  Plaintiff responded to the email by re-explaining his issue and stating: "A human needs to read this email and take action.  Thank you!"  In response, Facebook sent the same automated email as received in response to the first email.  *See* Exhibit E.

28.     Still further, on October 18, 2014, Plaintiff responded to a text messages from Facebook with the word "off."  Facebook responded: "Facebook texts are now off.  Reply on to turn them back on."  However, the very same day, Facebook sent Plaintiff another text message.  Plaintiff once again responded "off" and "all off."  Again, Facebook responded:  "Facebook texts are now off.  Reply on to turn them back on."  Again, still in the same day, Facebook sent Plaintiff another text message.  *See* Exhibit D.

29.     The text messages sent to Plaintiff's cellular phone were made with an ATDS as defined by 47 U.S.C. § 227(a)(1).

30.     The ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

31.     The telephone number messaged by Facebook was assigned to a cellular

telephone service for which Plaintiff incurs charges for incoming messages pursuant to 47 U.S.C.

§ 227(b)(1).

32.     The messages from Facebook to Plaintiff were not placed for "emergency

purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

## CLASS ACTION ALLEGATIONS

**A.  The Class**

33.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf

of himself and all others similarly situated.

34.     Plaintiff represents, and is a member of the following classes:

**Class 1: All persons within the United States who did not provide their cellular telephone number to Defendant and who received one or more text messages, from or on behalf of Defendant to said person's cellular telephone, made through the use of any automatic telephone dialing system within the four years prior to the filing of the Complaint.**

**Class 2: All persons within the United States who, after notifying Defendant that it no longer wished to receive text messages and receiving a confirmation from Defendant to that effect, received one or more text messages, from or on behalf of Defendant to said person's cellular telephone, made through the use of any automatic telephone dialing system within the four years prior to the filing of the Complaint.**

35.     Defendant and its employees or agents are excluded from the Classes. Plaintiff

does not know the number of members in the Classes, but believes the class members number in

the several thousands, if not more. Thus, this matter should be certified as a class action to assist

in the expeditious litigation of this matter.

36.     This suit seeks only damages and injunctive relief for recovery of economic injury

on behalf of the Classes, and it expressly is not intended to request any recovery for personal

injury and claims related thereto. Plaintiff reserves the right to modify or expand the Class

definitions to seek recovery on behalf of additional persons as warranted as facts are learned in

further investigation and discovery.

**B.  <u>Numerosity</u>**

      37.     Upon information and belief, Defendant has sent text messages to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent.  The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

      38.     The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery.  Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

**C.  <u>Common Questions of Law and Fact</u>**

      39.     There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members.  These questions include:

      a.   Whether Defendant sent non-emergency text messages to Plaintiff and Class members' cellular telephones using an ATDS;

      b.   Whether Defendant can meet its burden of showing it obtained prior express consent to send each message;

      c.   Whether Defendant's conduct was knowing willful, and/or negligent;

      d.   Whether Defendant is liable for damages, and the amount of such damages; and

      e.   Whether Defendant should be enjoined from such conduct in the future.

      40.     The common questions in this case are capable of having common answers.  If Plaintiff's claim that Defendant routinely sends automated text messages to telephone numbers assigned to cellular telephone services without prior express consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and

administered in this case.

**D.  Typicality**

41.     Plaintiff's claims are typical of the claims of the Class members, as they are all

based on the same factual and legal theories.

**E.  Protecting the Interests of the Class Members**

42.     Plaintiff will fairly and adequately protect the interests of the Classes and has

retained counsel experienced in handling class actions and claims involving unlawful business

practices.  Neither Plaintiff nor his counsel has any interests which might cause them not to

vigorously pursue this action.

**F.  Proceeding Via Class Action is Superior and Advisable**

43.     A class action is the superior method for the fair and efficient adjudication of this

controversy.  The interest of Class members in individually controlling the prosecutions of

separate claims against Facebook is small because it is not economically feasible for Class

members to bring individual actions.

44.     Management of this class action is unlikely to present any difficulties.  Several

courts have certified classes in TCPA actions.  These cases include, but are not limited to:

*Mitchem v. Ill. Collection Serv.*, 271 F.R.D. 617 (N.D. Ill. 2011); *Sadowski v. Med1 Online, LLC*,

2008 WL 2224892 (N.D. Ill., May 27, 2008); *CE Design Ltd. V. Cy's Crabhouse North, Inc.*,

259 F.R.D. 135 (N.D. Ill. 2009); *Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D.

Cal., May 29, 2012).

**COUNT I**
**Negligent Violations of the Telephone Consumer Protection Act,**
**47 U.S.C. § 227, *et seq.***

45.     Plaintiff repeats and realleges the above paragraphs of this Complaint and

incorporates them herein by reference.

46.     Defendant negligently sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Classes without their prior express consent.

47.     Each of the aforementioned messages by Defendant constitutes a negligent violation of the TCPA.

48.     Plaintiff and the Classes are entitled to an award of $500.00 in statutory damages for each message sent in negligent violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

49.     Additionally, Plaintiff and the Classes are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

**COUNT II**
**Knowing and/or Willful Violations of the Telephone Consumer Protection Act,**
**47 U.S.C. § 227, *et seq.***

50.     Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

51.     Defendant knowingly and/or willfully sent multiple automated text messages to cellular numbers belonging to Plaintiff and the other members of the Classes without their prior express consent.

52.     Each of the aforementioned messages by Defendant constitutes a knowing and/or willful violation of the TCPA.

53.     As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff and the Classes are entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

54.     Additionally, Plaintiff and the Classes are entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court grant Plaintiff and the Classes the following relief against Defendant:

1.  Injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

2.  Statutory damages of $500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

3.  Treble damages of up to $1,500.00 for each and every call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);

4.  An award of attorney's fees and costs to counsel for Plaintiff and the Classes; and

5.  Such other relief as the Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: November 20, 2014

Respectfully submitted,

By

Sergei Lemberg, Esq. (SL 6331)
LEMBERG LAW L.L.C.
1100 Summer Street, 3rd Floor
Stamford, CT 06905
Telephone: (203) 653-2250
Facsimile:  (203) 653-3424
Attorneys for Plaintiff